STATE v. MARVIN MARTIN SCROGGINS.

210 N. W. 2d 55.

August 10, 1973—No. 44242.

*Warren Spannaus*, Attorney General, *William B. Randall*, Ramsey County Attorney, and *Steven C. DeCoster* and *Robert Kittel*, Assistant County Attorneys, for appellant.

*Irving Shaw*, for respondent.

SCOTT, JUSTICE.

This is an appeal by the state from an order granting defendant's motion to suppress certain evidence in a prosecution for the illegal possession of a derivative of barbituric acid. We reverse on the grounds that the search discovering the evidence was lawful and, therefore, the evidence was admissible.

On December 27, 1972, at about 12:30 a. m. St. Paul Police Officers Jan Pitman and John Ballis, on routine patrol in a marked squad car in the vicinity of Selby Avenue and St. Albans Street, pulled over to the side of the road and stopped in order to let a vehicle that was following too closely pass. Instead of passing, the driver pulled in behind the squad car, stopped, and honked his horn. As the officers emerged from their squad car, thinking that the occupants of this vehicle wished to speak with them, they observed defendant get out of the vehicle on the driver's side and another man, later identified as Richard Jacobs, get out on the passenger's side. However, the two, neither of whom the officers knew, did not walk toward the officers but started to walk across the street in the direction of the Celebrity Lounge. At this point Officer Ballis said, "What can we do for you?" and defendant responded, "Nothing." Ballis then asked to see defendant's driver's license, and defendant replied that he didn't need a license because he hadn't been driving. The officers stated that they had seen him drive and again asked to see his license. Defendant repeated his earlier statement. The officers then asked defendant to accompany them to the squad car so they could run a license check. On the way to the car the of-

ficers apparently told defendant that they had to have some identification. Using profanities, defendant refused to get into the squad car and resisted Officer Ballis' efforts to hold him. Officer Pitman had to contend with Jacobs, who attempted to interfere with Ballis' efforts. However, within minutes Ballis was able, with the help of other officers who arrived in response to a call for assistance, to handcuff defendant. Because a potentially hostile crowd, which included defendant's screaming wife, had started to gather, the officers made only a very cursory weapons search of defendant at the scene before they drove off.

At the police station, prior to taking defendant to the booking area, Officer Ballis searched him by taking everything out of his pockets. According to Officer Ballis the purposes of this search were, first, to look for weapons and, second, to remove defendant's billfold in order to verify defendant's name. Ballis testified that he conducted the entire search in defendant's presence and that he inadvertently found the capsule containing the controlled substance when he set defendant's billfold on a ledge and the capsule rolled out.

The trial court found, in granting defendant's motion to suppress, that the search of the wallet was for the purpose of verifying defendant's identification in connection with a trivial traffic offense, and that such a search is forbidden at the scene and therefore also invalid at the police station. In reaching that determination, the court relied on State v. Curtis, 290 Minn. 429, 190 N. W. 2d 631 (1971).

We think the trial court's reliance upon the Curtis case was unjustified, for the facts of that case are clearly distinguishable from those of the instant case. In Curtis, the defendant was stopped by police officers in connection with a trivial traffic offense, and this court reasoned that a routine search at the scene incident to such an offense was unlawful. In the case before us, the defendant was not stopped for violating traffic regulations, but rather was asked for identification and a driver's license. The defendant subsequently became disorderly and the

officers required additional assistance in getting him into the squad car for the identification check. It was this subsequent behavior that ripened into the disorderly conduct charge and the search with which we are concerned.

The focal issue of this appeal is whether the police violated the constitutional protection afforded the defendant by emptying his pockets at the police station for purposes of determining his identity after a lawful arrest for a disorderly conduct charge. We think not.

The Missouri Supreme Court was faced with very similar facts in State v. Darabcsek, 412 S. W. 2d 97 (Mo. 1967), in which the defendant's pockets were searched as a part of the "booking" process and drugs were discovered. The court reasoned that it was a reasonable procedure for the protection of other prisoners, attendants, the defendant himself, and for the further purpose of preventing a possible escape or the introduction of obnoxious material into the jail. It was, in fact, a continuation of the process of the arrest, a unit of the "integrated incident." The court went on to state (412 S. W. 2d 102):

"Under these circumstances, it is of no consequence that the drug so discovered was not necessarily relevant to the charge for which the defendant was arrested. Harris v. United States, 331 U. S. 145, 67 S. Ct. 1098, 91 L. Ed. 1399; State v. Camper, Mo., 353 S. W. 2d 676. In possessing the drug defendant rendered himself chargeable with a continuing offense in the very presence of the officers. The pills, as exhibits, and the testimony concerning them were properly admitted in evidence."

In another decision with a like fact situation, Commonwealth v. Bowlen, 351 Mass. 655, 223 N. E. 2d 391 (1967), the court definitively stated that the Fourth Amendment could not be taken to prohibit the procedure of removing the contents of the pockets of a prisoner who is about to be incarcerated, even though this search is conducted at the police station and not at the place of arrest. Such a search was found to be pursuant to

an arrest, even though some time elapsed between the arrest and the jailing.

In the case before us, the defendant was uncontrollable at the time and place of arrest. There seems little doubt that the officers were in the initial stages of having him "booked" and lodged in jail. This required the necessity for accurate pre-incarceration identification. We therefore conclude that the search before jailing was reasonable and proper, and not a violation of the Fourth Amendment of the United States Constitution. Accordingly, the evidence found during such a search should not have been suppressed.

Reversed.