## STATE v. WILLIE BARBER.

241 N. W. 2d 476.

April 16, 1976—No. 45856.

*James P. Swanseen*, Legal Assistance of Ramsey County, Inc., for appellant.

*Pierre N. Regnier*, City Attorney, and *Thomas R. Hughes* and *Paulette K. Flynn*, Assistant City Attorneys, for respondent.

TODD, JUSTICE.

On stipulated facts defendant was found guilty by a St. Paul municipal court judge of driving after revocation in violation of Minn. St. 171.24. The issue on this appeal from judgment of conviction is whether the highway patrolman who stopped defendant had sufficient justification for doing so. We hold that the patrolman acted properly in stopping defendant, and accordingly we affirm.

At 1:15 p. m. on November 27, 1974, Officer William Henry of the Minnesota Highway Patrol observed defendant and a companion proceeding north on Interstate Highway No. 35, north of downtown St. Paul. The license plates on the automobile defendant was driving were wired on with baling wire instead of

being bolted on as they are on most automobiles. Suspecting that the plates might belong to another automobile than the one defendant was driving, Officer Henry decided to stop defendant's automobile and investigate the situation. Upon stopping the automobile, Officer Henry walked up to defendant and asked him for his driver's license. Defendant replied that he did not have one and produced a notice of license revocation which he had received from the state. After confirming over his radio that defendant's license had been revoked, Officer Henry arrested defendant, and this prosecution followed.[1]

Officer Henry testified at the Rasmussen hearing that prior to making the stop, he had not observed any traffic violation.[2] Therefore, the issue became whether Officer Henry was justified in stopping the vehicle because of his suspicions about the reason the plates were wired on instead of bolted on.

---

[1] Defendant was also prosecuted for driving with an open bottle in violation of Minn. St. 169.122. This charge was later dismissed upon motion of the prosecutor.

[2] Minn. St. 169.79 provides as follows: "No person shall operate, drive or park a motor vehicle on any highway unless such vehicle shall have been registered in accordance with the laws of this state and shall have the number plates for the current year only, as assigned to it by the registrar of motor vehicles, conspicuously displayed thereon in such manner that the view thereof shall not be obstructed. If the vehicle be a motorcycle, motor scooter, motorized bicycle, motorcycle sidecar, trailer, or semitrailer, one such plate shall be displayed on the rear thereof; if it be any other kind of motor vehicle, one such plate shall be displayed on the front and one on the rear thereof; securely fastened so as to prevent the same from swinging. It shall be the duty of the person driving the motor vehicle to keep the plate legible and unobstructed and free from grease, dust, or other blurring material so that the lettering thereon shall be plainly visible at all times."

If the plates were wired on in such a way as to swing while driving, then defendant was in violation of the statute. It may be that this was the case because the officer testified that they "were just hanging on there." However, the parties agreed to the suggestion of the trial court that it take as established that the plates were not displayed improperly. Therefore, for purposes of our decision we must assume that Officer Henry did not observe any traffic violation prior to making the stop.

In affirming the conviction and upholding the trial court's ruling that the stop was legal, we rely on our recent decision in State v. McKinley, 305 Minn. 297, 232 N. W. 2d 906 (1975), decided after the lower court's decision in this case. In McKinley, we dealt with the specific issue of whether police may stop a driver for a routine license check when the police have no grounds whatever for suspecting the driver of any motor-vehicle violation or other crime. There, the police during daylight hours stopped the defendant and asked him to produce his license after observing his driving in an alley in a lawful manner and within the 10-miles-per-hour speed limit for the alley. In affirming a dismissal of a charge of driving after revocation, we held that single nonsystematic stops for routine driver's license checks required as justification some reasonable suspicion by police of a violation. In that decision, we quoted approvingly (305 Minn. 303, 232 N. W. 2d 911) the following statement by the New York court in People v. Ingel, 36 N. Y. 2d 413, 420, 369 N. Y. S. 2d 67, 74, 330 N. E. 2d 39, 44 (1975):

"It should be emphasized that the factual basis required to support a stop for a 'routine traffic check' is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable. For example, an automobile in a general state of dilapidation might properly arouse suspicion of equipment violations. All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion' (Terry v. Ohio, 392 U. S. 1, 21, 88 S. Ct. 1868, 1880, [20 L. ed. 2d 889, 906 (1968)])."[3]

---

[3] In addition to State v. McKinley, 305 Minn. 297, 232 N. W. 2d 906 (1975), see City of St. Paul v. Vaughn, 306 Minn. 337, 237 N. W. 2d 365 (1975); State v. Scroggins, 297 Minn. 144, 210 N. W. 2d 55 (1973); State v. Ellanson, 293 Minn. 490, 198 N. W. 2d 136 (1972); State v. Fish, 280 Minn. 163, 159 N. W. 2d 786 (1968).

We believe that the above-quoted passage governs our decision in this case. Here the plates were affixed to the vehicle in an unusual, although apparently legal, way. Police and patrol officers from their experience learn to be on the lookout for things such as this because the appearance of license plates, e. g., clean plates on a dirty car, often suggests that the plates do not belong to the vehicle. Thus, persons who use automobiles to get away after committing crimes often put plates from other automobiles on their vehicles in order to escape apprehension even if the plates are observed. By using wire to affix the plates, one might be able to remove them more quickly than he could if they were bolted to an automobile.

We hold the action of the police officer in stopping defendant's vehicle in this case was proper and not based on mere whim, caprice, or idle curiosity. Here, the facts, together with the reasonable inferences an experienced police officer could draw therefrom, justify the minimal intrusion upon defendant's rights. We acknowledge the fine line drawn between this case and McKinley, but hold that these two decisions represent the point at which such a fine line must be drawn under the factual situations presented therein.

Affirmed.