**STATE of Minnesota, Appellant,**

v.

**Sandy Lynn MENARD, Respondent (C4–83–1473),**

**Russell Wayne Rushfeldt, Respondent (C8–83–1475).**

**Nos. C4–83–1473, C8–83–1475.**

Court of Appeals of Minnesota.

Jan. 4, 1984.

Hubert H. Humphrey, III, Atty. Gen., John Dimich, Itasca Co. Atty., Bernard L. Bodien, Asst. County Atty., Grand Rapids, for appellant.

Kimball Mattson, Mattson & Finn, Walker, for Menard.

C. Paul Jones, Public Defender, Robert D. Goodell and Susan Maki, Asst. Public Defenders, Minneapolis, for Rushfeldt.

Considered and decided by POPOVICH, C.J., and FOLEY and SEDGWICK, JJ., with oral argument waived.

## OPINION

FOLEY, Judge.

This case is a consolidated pre-trial appeal by the state, pursuant to Minn.R. Crim.P. 29.03, from an order of the Itasca County District Court dismissing the felony complaints against defendants on the ground that the investigatory stop which

led to the arrests was unconstitutional. We reverse.

## FACTS

On Sept. 9, 1983, Donald Irish of the Nashwauk Police Department stopped a pickup at the east entrance to Nashwauk on Hwy. # 169 at about 12:30 a.m.

Officer Irish had seen the pickup truck of a local man coming into town shortly after midnight with three occupants he could not then readily identify. Shortly after, Irish observed the pickup truck cross a street and proceed down an alley with something now in the pickup box. The pickup had no tailgate. He followed the pickup a short distance until it turned onto the state highway leaving town. Irish noticed that the object was a motorcycle which was lying on its side. Irish suspected that the motorcycle had been stolen. He put on his red flashers. The occupant on the right side turned and looked at him. The truck pulled over. Irish identified the occupants which included Sandy Lynn Menard and Russell Wayne Rushfeldt. He called in the license number of the motorcycle and within about a minute learned that the motorcycle was reported as stolen on August 20, 1983 in Duluth.

Subsequent questioning led to the confiscation of another stolen motorcycle from the defendants' residence. Teletypes were received indicating the motorcycles were listed as owned by a couple in Duluth, Minnesota and their collective value was between $5,000 and $6,000.

Charges were brought individually against Sandy Lynn Menard and Russell Wayne Rushfeldt for violating Minn.Stat. § 609.05 & 609.53, subd. 1(1) (1982).

On September 26, 1983, at an Omnibus hearing, the trial court dismissed the complaints against the defendants finding that the investigatory stop made by Officer Irish was unconstitutional. The state appeals from this order.

## ISSUE

Did the officer have reasonable suspicion under *Terry v. Ohio* to make an investigatory vehicle stop?

## ANALYSIS

■ The Court enunciates in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the following standard for reasonable investigative stops:

[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.

392 U.S. at 21, 88 S.Ct. at 1880. *See State v. Pleas,* 329 N.W.2d 329 (Minn.1983), and *State v. Hodgman,* 257 N.W.2d 313 (Minn. 1977).

*Terry, supra,* goes on to explain the governmental interest which justifies the intrusion:

One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.

392 U.S. at 22, 88 S.Ct. at 1880.

In the instant case, the trial judge relied on the case of *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). In *Prouse* the Court stated:

[W]e hold that except in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment.

440 U.S. at 664, 99 S.Ct. at 1401.

Although *Prouse* affirms the objective standard originally described in *Terry, it deals only with license check stops* where no unusual behavior has been observed. In

the present case, Officer Irish stopped the truck to determine whether the motorcycle which now appeared in the back of the truck was stolen, not to verify a driver's license. Therefore, the trial judge's reliance on *Prouse* was misplaced.

The trial judge also compared the instant case to that of *State v. Johnson*, 257 N.W.2d 308 (Minn.1977), which involved the suppression of evidence discovered following the investigatory stop of a vehicle of which the officer was "suspicious." Applying the *Terry* standard, the court found the search to be unconstitutional because the officer could not articulate *any* reason for suspecting that criminal activity was occurring. The court goes on to state:

> It should be emphasized that the factual basis required to support a stop for a 'routine traffic check' is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable. For example, an automobile in a general state of dilapidation might properly arouse suspicion of equipment violations. All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity.

257 N.W.2d at 309. *See People v. Ingle*, 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975), cited with approval in *State v. Johnson, supra*, and *State v. McKinley*, 305 Minn. 297, 232 N.W.2d 906 (1975).

In *Johnson, supra*, the officer could not give *one* observation that made him suspicious. In the case at bar, the officer related a number of observations which aroused his suspicion and led him to believe the motorcycle being transported out of town in the pickup was stolen. The pickup stop met the threshold requirements of *Johnson;* it was not a routine license check and it was not the product of mere whim, caprice, or idle curiosity.

The case of *State v. Barber*, 308 Minn. 204, 241 N.W.2d 476 (1976), illustrates how only one observation may lead to the inference that criminal activity might be occur-

ring. The officer in *Barber* noted that license plates were wired rather than bolted onto the vehicle. Suspecting that the plates might belong to an automobile other than the one being driven, the officer decided to stop the vehicle and investigate. The Minnesota Supreme Court upheld the constitutionality of the stop, concluding that: "Here, the facts, together with the reasonable inferences an experienced police officer could draw therefrom, justify the minimal intrusion upon defendant's rights." 241 N.W.2d at 477.

In the case at bar, Officer Irish observed that the truck was missing its tailgate. Given his other observations, Officer Irish could reasonably infer that a missing tailgate could facilitate the quick movement of stolen property with minimal noise. His suspicion required only about one minute to investigate—a minimal intrusion upon defendants' rights.

More recently the Minnesota Supreme Court has applied the analysis set forth in the case of *United States v. Cortez*, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), in determining whether an investigative vehicle stop is constitutional. *See State v. Kvam*, 336 N.W.2d 525 (Minn. 1983), and *State v. Mallory*, 337 N.W.2d 391 (Minn.1983). In *Cortez* border patrol officers made an investigatory stop of a pickup truck with a camper shell to determine whether illegal aliens were being transported as suspected by the officers on the basis of their knowledge and observations. In finding the stop did not violate the Fourth Amendment, the court proceeded with the following analysis:

> [T]he essence of all that has been written is that the totality of the circumstances— *the whole picture—must be taken into account*. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity. [Cites omitted.]

The idea that an assessment of the whole picture must yield a particularized suspi-

cion contains *two elements*, each of which must be present before a stop is permissible. *First, the assessment must be based upon all the circumstances.* The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions—inferences and deductions that might well elude an untrained person. The process does not deal with hard certainties, but with probabilities ... the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement. The *second element* ... is the concept that the process just described must *raise a suspicion that the particular individual being stopped is engaged in wrongdoing....* (Emphasis added.)

449 U.S. at 418–19, 101 S.Ct. at 695.

■ Using the analytical framework of *Cortez,* the Minnesota Supreme Court considers "the totality of the circumstances" in determining "whether the police who made the stop are able to articulate at the omnibus hearing that they had a 'particularized and objective basis for suspecting the particular persons stopped of criminal activity.'" *State v. Kvam,* 336 N.W.2d 525, 528 (Minn.1983). In addition, the articulated observations of the police officer are viewed from the perspective of a trained law enforcement officer who is permitted to make "inferences and deductions that might well elude an untrained person." *Id.* citing *Cortez, supra,* 449 U.S. at 419, 101 S.Ct. at 695.

■ Viewing the observations of Officer Irish in this case as a whole, from the perspective of a law enforcement officer, we hold that the investigatory stop of defendants was constitutional. Officer Irish did not stop the vehicle for a routine license check on a whim. The officer was able to articulate specific observations which led him as a trained law enforcement officer to suspect that the truck without a tailgate, which passed through an alley at a late hour on its way out of a small town, was transporting a stolen motorcycle. Viewing the case from the vantage point of the officer on the scene, his observations sufficiently demonstrate that *he* had reasonable suspicion to justify an investigatory stop of defendants' vehicle to determine whether the defendants were engaged in wrongdoing.

## DECISION

We reverse and reinstate the complaints with all suppressed evidence for trial.