Linda Louise HOLSTEIN,
petitioner, Respondent,

v.

COMMISSIONER OF PUBLIC SAFETY, Appellant.

No. C9–86–611.

Court of Appeals of Minnesota.

Aug. 19, 1986.

Donald H. Nichols, Minneapolis, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Joel A. Watne, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Heard, considered and decided by FOLEY, P.J., and HUSPENI and CRIPPEN, JJ.

## OPINION

CRIPPEN, Judge.

The trial court applied a probable cause standard to assess the validity of a police stop leading to an arrest and alcohol testing. We reverse and remand for a determination using the proper standard. We also reverse the trial court's conclusion that the chemical testing was invalid.

## FACTS

Officer James Dahl of the Minnetonka Police Department was on duty on the morning of December 21, 1985, when he began observing respondent Linda Holstein's vehicle driving southward on County Road 18. At trial, Dahl testified that while he was observing respondent's car, it drifted towards the side of the road and then pulled back onto a straight course in the traffic lane. He testified that the vehicle drifted towards the fog line but did not cross the fog line.

Approximately two miles beyond this first incident observed by Dahl, the vehicle drifted towards an exit ramp and then pulled abruptly back and continued south.

Dahl then caused respondent's vehicle to pull over.

Officer Dahl approached the vehicle and began talking to respondent. Dahl noticed an odor of alcohol and observed that respondent's eyes were bloodshot. He administered field sobriety tests to respondent and determined that she was under the influence of alcohol. Respondent failed a preliminary breath test. Dahl placed respondent under arrest and took her to the police station for further testing. During the journey to the police station, which took five to ten minutes, Dahl observed respondent in his rear view mirror.

At the police station, respondent told Dahl she wanted to go to the bathroom. When Dahl could not find a female officer to accompany respondent, Dahl allowed respondent to go by herself. Shortly after respondent returned from the bathroom, a certified Intoxilyzer operator administered an Intoxilyzer test to respondent. Although Dahl testified he had respondent under observation for 20 minutes prior to the testing, the trial court found the observation period did not begin until after respondent returned from the bathroom and that there had been an insufficient period of observation.

The Intoxilyzer operator first ran a diagnostic check of the Intoxilyzer. The four air blank tests yielded results of .000; the calibration standard test yielded a result of .103, with a replicate reading of .104. The first test administered to respondent showed an alcohol concentration of .103, with a replicate reading of .104. The second test indicated an alcohol concentration of .104 with a replicate reading of .105. The reported value was .10 with a 100 percent correlation. The trial court determined that the correlation was 96 percent.

At respondent's trial, Darrin Pepper testified that she was a passenger in respondent's vehicle on the night of the incident. Pepper testified that respondent had consumed only a martini, a white wine spritzer, and a glass and a half of white wine before the incident occurred. She said that when Dahl observed respondent's vehicle turning towards an exit ramp, respondent was intending to exit but then pulled back onto the highway when Pepper told her it was the wrong exit.

The Commissioner of Public Safety revoked respondent's driving privileges. The trial court rescinded the revocation, finding that "Officer James Dahl did not have probable cause to stop the petitioner's vehicle." The trial court also found that the Commissioner had not shown "by a fair preponderance of the evidence that the test results were accurately evaluated." This was so, the trial court said, because "there was a conflict concerning the 15 to 20 minute observation period, the reported value of .10 and the disputed breath correlation * * *."

The Commissioner appeals the rescission of the revocation.

## ISSUES

1. Did the trial court apply an erroneous rule of law?

2. Does the evidence permit us to determine as a matter of law whether the officer had an articulable suspicion of wrongful conduct by respondent?

3. Did the trial court have lawful bases for concluding the chemical test was invalid?

## ANALYSIS

### I.

◼ Before making a proper stop to investigate, an officer must have an articulable suspicion of criminal activity. *Berge v. Commissioner of Public Safety,* 374 N.W.2d 730, 732 (Minn.1985). The trial court applied a probable cause standard in this case. Under *Berge,* that is an incorrect standard: the officer was required only to demonstrate articulable suspicion.

### II.

◼ Where the trial court applied an incorrect standard, we have remanded so the court may apply the proper "articulable suspicion" standard. *See State v. Well-*

*man,* 355 N.W.2d 331, 333 (Minn.Ct.App. 1984). The Commissioner argues, however, that the evidence in this case would allow us to find as a matter of law that Officer Dahl had an articulable suspicion and thus made a proper stop of respondent's vehicle. We disagree. It is normally for the trial court, not the appellate court, to make the finding of whether there was articulable suspicion. *See State v. Pollard,* 370 N.W.2d 426, 427 (Minn.Ct. App.1985). We note that the supreme court in *Berge* determined as a matter of law, under the facts of that case, that the officer had an objective basis for the stop. *Berge,* 374 N.W.2d at 732. This conclusion, however, was based on the fact that the trial court specifically credited the testimony of the arresting officer. The trial court did not do so in this case; in fact, the trial court made findings that conflict with the officer's testimony. We cannot determine as a matter of law that Officer Dahl had articulable suspicion and a proper basis for stopping respondent's vehicle.

We also disagree with the Commissioner's argument that the facts here are compelling such that articulable suspicion might be found as a matter of law. This is not a case like *Johnson v. Commissioner of Public Safety,* 388 N.W.2d 759 (Minn.Ct. App.1986) (vehicle without lights stopped at night in traveled lane of road). Nor is this a case in which respondent blatantly violated a traffic ordinance. *See Berge,* 374 N.W.2d at 731 (accused ran a stop sign). Instead, the officer merely observed respondent's vehicle move toward the side of the road. The vehicle did not cross the fog line. Later, the vehicle was seen heading towards an exit ramp and then turning abruptly back into the traffic lane. These facts do not compel a finding that Officer Dahl had articulable suspicion of unlawful behavior.

Respondent's arguments suppose cause to hold as a matter of law that Officer Dahl did not have an articulable suspicion of respondent's unlawful conduct, based on the record or the trial court's finding on probable cause. The trial court also found only that the officer saw respondent "drift toward the fog line" at one point and after another two miles "drift into the exit lane and then abruptly pull back." The findings disregard the officer's observations between the two noted episodes and the officer's description of the second movement as unusual and hazardous.

■ We are also unable to uphold respondent's position as a matter of law. The finding on probable cause, controlled by an erroneous standard of law, is entitled to no deference on appeal. *In re Holden's Trust,* 207 Minn. 211, 227, 291 N.W. 104, 112 (1940). While the remaining findings show rejection of some of the officer's conclusions, it is not our role to sort out which evidence is credible in order to reach an ultimate finding whether Officer Dahl had an articulable suspicion of wrongful conduct by respondent.

### III.

Besides finding that Officer Dahl had no probable cause, the trial court found that the test results were inaccurately evaluated and invalid. We find, for the following reasons, that this finding was in error.

■ The trial court determined that the test was invalid because there was a "conflict concerning the 15–20 minute observation period." A deficiency in the officer's observation of the subject does not invalidate the testing; it merely gives the subject an opportunity to demonstrate how the deficiency made the testing unreliable. *See Melin v. Commissioner of Public Safety,* 384 N.W.2d 474, 476 (Minn.Ct.App. 1986). Respondent did not so demonstrate here.

■ The trial court also rejected the test based on the reported test value of .10. The Commissioner is not required to prove the Intoxilyzer tests were accurate within an alleged margin of error. *See Hrncir v. Commissioner of Public Safety,* 370 N.W.2d 444, 445 (Minn.Ct.App.1985).

■ The trial court questioned the accuracy of the test results because it found only a 96 percent correlation between the

results. The Intoxilizer test record indicated a 100 percent correlation. Even if the trial court's calculation is correct, a 96 percent correlation does not make the testing suspect. This court has previously approved test results in which the correlation was under 90 percent. *See, e.g., Daley v. Commissioner of Public Safety*, 384 N.W.2d 536, 538–39 (Minn.Ct.App.1986).

## DECISION

The trial court erred when it applied a probable cause standard instead of an articulable suspicion standard and erred by determining that the test results were invalid.

Reversed and remanded.

FOLEY, J., dissents.

FOLEY, Judge (dissenting).

I respectfully dissent and cite *People v. Ingle* 36 N.Y.2d 413, 330 N.E.2d 39, 369 N.Y.S.2d 67 (1975). In *Marben v. State, Department of Public Safety*, 294 N.W.2d 697 (Minn.1980), the Minnesota Supreme Court quoted from *Ingle* as follows:

> It should be emphasized that the factual basis required to support a stop for a "routine traffic check" is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable. For example, an automobile in a general state of dilapidation might properly arouse suspicion of equipment violations. *All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity.* It is enough if the stop is based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." (*Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, *supra.*)

*Marben*, 294 N.W.2d at 699 (emphasis supplied) (quoting *Ingle*, 36 N.Y.2d at 420, 330 N.E.2d at 44, 369 N.Y.S.2d at 74).

The Minnesota Supreme Court has consistently applied and quoted the standard adopted by the New York court in *Ingle*. *See, e.g., State v. Engholm*, 290 N.W.2d 780, 783 (Minn.1980); *State v. Johnson*, 257 N.W.2d 308, 309 (Minn.1977); *State v. McKinley*, 305 Minn. 297, 303–04, 232 N.W.2d 906, 911 (1975). More recently, *Ingle* was cited with approval in *State v. Menard*, 341 N.W.2d 888, 891 (Minn.Ct. App.1984), and in *Frank v. Commissioner of Public Safety*, 384 N.W.2d 574, 576 (Minn.Ct.App.1986). To reiterate, the significant portion of the standard from *Ingle* is: "All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity." *Id.*, 36 N.Y.2d at 420, 330 N.E.2d at 44, 369 N.Y.S.2d at 74. The majority does not cite *Ingle*.

The facts as found by the majority are as follows:

> Officer James Dahl of the Minnetonka Police Department was on duty the morning of December 21, 1985, when he began observing respondent Linda Holstein's vehicle driving southward on County Road 18. At trial, Dahl testified that while he was observing respondent's car, it drifted towards the side of the road and then pulled back onto a straight course in the traffic lane. He testified that the vehicle drifted towards the fog line but did not cross the fog line.

> Approximately two miles beyond this first incident observed by Dahl, the vehicle drifted towards an exit ramp and then pulled abruptly back and continued south. Dahl then caused respondent's vehicle to pull over.

Applying the *Ingle* test, the officer had an articulable basis for stopping the subject vehicle. The case should be reviewed through the eyes of the officer making the stop. *Johnson v. Commissioner of Public Safety*, 388 N.W.2d 759 (Minn.Ct.App. 1986). The trial court should be reversed and revocation ordered. Another hearing is not required, even though the trial court applied the erroneous higher standard of probable cause to an investigatory stop.