**STATE of Minnesota, Appellant,**

v.

**Daniel Lee CLARK, Respondent.**

No. C3–86–703.

Court of Appeals of Minnesota.

Oct. 21, 1986.

Hubert H. Humphrey, III, State Atty. Gen., St. Paul, Richard L. Ronning, Willmar City Atty., Willmar, for appellant.

Jay W. Liedman, Willmar, for respondent.

Heard, considered and decided by FORSBERG, P.J., and FOLEY and LANSING, JJ.

## OPINION

FOLEY, Judge.

The State of Minnesota appeals from a pretrial order dismissing a three-count charge against respondent Daniel Lee Clark for aggravated violations, Minn.Stat. § 169.129 (1984), a second offense of driving while intoxicated, Minn.Stat. § 169.121, subds. 1(a), 3(a) (1984), and driving after revocation, Minn.Stat. § 171.24 (1984). Appellant contends that the trial court erred as a matter of law in concluding that the officer failed to articulate specific facts justifying a brief investigatory stop of respondent's vehicle. We reverse and remand.

## FACTS

On February 11, 1986 at approximately 12:25 a.m., Willmar Police Officer David Wyffels was outside of his vehicle and on

foot when the loud exhaust of an approaching vehicle attracted his attention. As he was walking back to his squad car, he observed the vehicle stop at the stop sign. As the vehicle passed through the intersection, Wyffels claimed the driver "appeared to be staring in my direction." He thought that was unusual.

> From the stare that was directed in my direction, it appeared that he was looking at me but did not really comprehend I was there or was really seeing me. It was kind of a blank, what I described as a drunken stare.

Wyffels testified that on prior occasions when he had observed the same appearance on other individuals, "I found that they were under the influence of alcohol, displaying the same characteristics." He admitted that he was about 20 feet away from the vehicle and that the entire incident lasted about 3–4 seconds from the time the vehicle stopped until it passed through the intersection. Wyffels further noted that when the vehicle passed him, the rear license plate was obliterated by snow and not visible. He observed nothing unusual in the manner in which the driver accelerated from the stop sign.

Wyffels stopped the vehicle and identified respondent as the driver from his South Dakota driver's license. He observed various indicia of intoxication and arrested respondent after he failed a preliminary breath test.

Wyffels claimed that after the stop, he "couldn't see any muffler on the vehicle, and from the sound, it didn't appear it was muffled at all." Despite these observations, Wyffels did not issue a citation or warning for excessive exhaust or for an obstructed license plate. He explained that he has never issued a citation for loud exhaust:

> Normally, when I do make a stop, I notify the driver of the violation and sometimes I'd issue an equipment citation. If I feel they are going to fix the vehicle, I would just issue them an oral warning. In this case, it was not even his own

vehicle. I didn't see any point in issuing him a citation for the loud exhaust.

According to the complaint, Wyffels initiated the stop after observing that the vehicle "was operated by a driver that had a blank look on his face" and "was apparently without mufflers."

Respondent moved to dismiss the complaint, arguing that the stop was invalid. An omnibus hearing was held at which Wyffels testified. Concluding that "the arresting officer did not have an articulable basis for his investigatory stop of the defendant's vehicle," the omnibus court dismissed the complaint.

## ISSUE

Did the trial court err as a matter of law in concluding that the stop was invalid?

## ANALYSIS

It is well-founded that a police officer must have a "specific and articulable suspicion of a violation before the stop will be justified." *Marben v. Department of Public Safety*, 294 N.W.2d 697, 699 (Minn. 1980). In such cases, the Minnesota Supreme Court has expressly adopted the following standard:

> It should be emphasized that the factual bases required to support a stop for a "routine traffic check" is minimal. An actual violation of the Vehicle and Traffic Law need not be detectable. For example, an automobile in a general state of dilapidation might properly arouse suspicion of equipment violations. All that is required is that the stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." (*Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, *supra.*)

*Id.* (quoting *People v. Ingle*, 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975)).

In the present case, the trial court found, among other things, that when Wyffels first observed respondent's vehicle, "he noted a loud exhaust noise coming from the vehicle" and that "[w]hile following the vehicle, he observed that the rear license plate was 'obliterated by snow,' preventing him from reading the letters and numbers on the license plate." The trial court further found that it was at that point that "Wyffels activated his red lights and proceeded to bring the vehicle to a stop." Although these findings relative to the condition of the vehicle sufficiently demonstrate specific and articulable facts to support a stop of respondent's vehicle, the trial court nevertheless concluded that the stop was invalid. However, this case is factually distinguishable from the case relied upon by the trial court as controlling, *State v. Bender*, 381 N.W.2d 896 (Minn.Ct. App.1986).[1]

Nor do we agree, as the trial court suggests, that Wyffels' failure to ticket respondent for muffler or license plate violations *after* the stop and upon closer inspection of the vehicle renders the initial stop invalid. This court has clearly stated: "An officer need not observe a violation to make a valid stop." *Johnson v. Commissioner of Public Safety*, 388 N.W.2d 759, 760 (Minn.Ct.App.1986). Wyffels' testimony clearly indicates that at the time of the investigatory stop, he suspected two violations of law relating to the condition of the

vehicle; his stop of the vehicle was therefore proper.

Finally, respondent has moved for $1,485 in attorney's fees pursuant to Minn.R. Crim.P. 28.04, subd. 2(6). We find $500 to be reasonable and award him attorney's fees in that amount plus costs of $111.50. *See State v. Eisenbacher*, 368 N.W.2d 369, 372 (Minn.Ct.App.1985); *City of Mankato v. Fetchenhier*, 363 N.W.2d 76, 79 (Minn. Ct.App.1985).

### DECISION

The trial court erred as a matter of law in concluding that the stop of respondent's vehicle was invalid. Respondent is awarded $500 in attorney's fees and costs of $111.50.

Reversed and remanded.

---

1. In *State v. Bender*, 381 N.W.2d 896 (Minn.Ct. App.1986), the arresting officer stopped a vehicle after observing loud exhaust and rapid acceleration as the vehicle passed by. Affirming the trial court, this court determined that the stop was invalid because the arresting officer did not suspect the driver of driving while under the influence (the driver did not exceed the speed limit, drive recklessly, or commit any other traffic offense); the officer did not infer from the driver's conduct that he was involved in any sort of criminal activity; and the officer did not ticket the driver for a defective muffler or testify that the level of noise would have constituted a violation (the officer had only stated that in his subjective opinion the car made "excessive noise.") *Id.* at 897–98.

Unlike this case, the arresting officer in *Bender* did not testify that there had been a violation

of the law. Here, two violations can be inferred from Wyffels' testimony: Wyffels heard loud exhaust noise coming from the vehicle which led him to suspect the muffler was inoperative, and he could not see the rear license plate. Although the trial court did not find Wyffels' observation of respondent's "drunken stare" to be reasonable or credible, these other factors articulated by Wyffels' which relate to the condition of respondent's automobile support an objective inference that there had been a violation of the law. *See Marben v. Department of Public Safety*, 294 N.W.2d 697, 699 (Minn. 1980) (stop proper when based solely on an informant's claim of tailgating); *State v. Barber*, 308 Minn. 204, 241 N.W.2d 476 (1976) (although plates displayed properly, officer's inference of possible criminal act from fact that plates were wired on with baling wire justified stop).