**STATE of Minnesota, Appellant,**

v.

**Nathan James FIEBKE, Respondent.**

No. C7–96–950.

Court of Appeals of Minnesota.

Oct. 22, 1996.

Terry L. Adkins, Rochester City Attorney, Patricia K. Alfredson, Assistant City Attorney, Rochester, for Appellant.

Hubert H. Humphrey, III, Attorney General, St. Paul, for Appellant.

Tina Liebling, Rochester, for Respondent.

Considered and decided by WILLIS, P.J., and LANSING and KALITOWSKI, JJ.

## OPINION

LANSING, Judge.

In a pretrial appeal, the state challenges a district court order quashing an arrest and suppressing evidence obtained after a state trooper stopped a vehicle for a seatbelt violation. Under Minnesota law the observed seatbelt violation did not provide a constitutionally reasonable basis for the stop, and we affirm.

## FACTS

Nathan Fiebke was stopped by a state trooper when the trooper observed that Fiebke and his front-seat passenger were not wearing their seatbelts. The trooper asked for Fiebke's driver's license and ran a check of the license number. The check revealed that Fiebke's license had been suspended for nonpayment of a Florida traffic fine. The trooper issued Fiebke a citation for driving after suspension. Fiebke was not cited for driving without a seatbelt.

In a pretrial ruling, the district court held that the state trooper improperly detained Fiebke, and the court quashed the arrest and suppressed evidence that Fiebke's license had been suspended. The state appealed.

## ISSUE

Did the driver and front-seat passenger's failure to wear their seatbelts provide a reasonable basis for the stop?

## ANALYSIS

To prevail in a pretrial appeal from an order suppressing evidence, the state must show both that the district court's ruling is erroneous and that the ruling will have a critical impact on the outcome of the criminal prosecution. *State v. Webber*, 262 N.W.2d 157, 159 (Minn.1977). The critical impact of the order suppressing evidence of Fiebke's license suspension is not disputed. In considering whether the ruling is erroneous, the state argues that because the district court bifurcated the suppression ruling, our review is limited to the scope of the detention rather than the basis for the stop. We reject this limitation. Both issues stem from the same motion, and it is the court's final suppression ruling that formed the basis for the appeal. In reviewing a district court's pretrial suppression order on undisputed facts, we determine independently as a matter of law whether the evidence must be suppressed. *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn. 1992).

When a police officer stops a vehicle, it constitutes a "seizure" within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). The Fourth Amendment protects citizens from "unreasonable searches and seizures." U.S. Const. amend. IV.[1] Typically, a limited search and seizure is reasonable if the officer has "a specific and articulable suspicion of a violation." *Marben v. Department of Pub. Safety*, 294 N.W.2d 697, 699 (Minn.1980) (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). An officer is permitted to form a suspicion "on the basis of all the circumstances and may draw inferences and deductions that might elude an untrained person." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn.1995). Since an automobile stop is a seizure, it is also "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances." *Whren v. United States*, —— U.S. ——, ——, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996). As a general matter, the decision to stop an automobile is reasonable when the police observe a traffic

---

1. The Minnesota Constitution provides the same protection. Minn. Const. art. I, § 10. And the Minnesota Supreme Court has generally interpreted the protections offered under the state Constitution to be the same as those under the federal Constitution with minor exceptions not applicable to this case. *See In re Welfare of E.D.J.*, 502 N.W.2d 779 (Minn.1993) (rejecting Fourth Amendment interpretation of *California v. Hodari D.*, 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)).

violation. *See, e.g., State v. Barber*, 308 Minn. 204, 241 N.W.2d 476 (1976) (license plates attached by wire); *State v. Clark*, 394 N.W.2d 570 (Minn.App.1986) (loud exhaust noises).

The Minnesota seatbelt law requires that the driver and front-seat passenger in a motor vehicle wear seatbelts. Minn.Stat. § 169.686, subd. 1(1)-(2) (1994). *"Unless otherwise declared * * * with respect to particular offenses,* it is a petty misdemeanor for any person to do any act forbidden or fail to perform any act required by [the traffic regulations]." Minn.Stat. § 169.89, subd. 1 (1994) (emphasis added). The seatbelt law includes a declaration restricting when a violator may receive a citation: "A peace officer may not issue a citation for a violation of [subdivision 1] unless the officer lawfully stopped or detained the driver of the motor vehicle for a moving violation other than a violation involving motor vehicle equipment." Minn.Stat. § 169.686, subd. 1 (1994).

The seatbelt law's restrictive enforcement provision eliminates the primary reason for an officer to stop a motorist when observing a violation: to *enforce* the traffic laws. " '[T]he foremost method of enforcing traffic and vehicle safety regulations * * * is acting upon observed violations,' which afford the ' "quantum of individualized suspicion" ' necessary to ensure that police discretion is sufficiently constrained." *Whren*, —— U.S. at ——, 116 S.Ct. at 1776 (quoting *Prouse*, 440 U.S. at 659, 654–55, 99 S.Ct. at 1399, 1396 (citation omitted)). In making a seatbelt violation unenforceable unless it accompanies another violation, the legislature has created a conditional traffic offense.

■ The definition of an offense is within the province of the legislature. *State v. Olmscheid*, 492 N.W.2d 263, 266 (Minn.App. 1992). But the power to define the scope of constitutional protection rests with the courts. *Hunstiger v. Kilian*, 130 Minn. 474, 477, 153 N.W. 869, 870 (1915). Similarly, the power to enforce constitutional and statutory violations by excluding evidence is a judicial

function. *See, e.g., State v. Lien*, 265 N.W.2d 833 (Minn.1978) (exclusionary rule will not be applied to all statutory violations). Thus the legislature cannot create constitutional rights by statutory enactment, but is free to enact statutes aimed at protecting or facilitating the exercise of constitutional rights. *State v. Mitjans*, 408 N.W.2d 824, 830 (Minn.1987); *cf. State v. Greyeagle*, 541 N.W.2d 326 (Minn. App.1995) (noting absence of argument on whether legislature could permit suspicionless stops of cars with special plates). But in defining under what circumstances an act or failure to act becomes an offense, the legislature influences the analysis of constitutional reasonableness by expanding or contracting the scope of offenses that could provide a reasonable basis for a stop.

■ The analysis of constitutional reasonableness also takes into account an officer's attendant circumstances when stopping an individual for a suspected violation. *See generally Cripps*, 533 N.W.2d at 391 (describing federal and state constitutional requirements for seizure and permitting articulable suspicion to be drawn from totality of circumstances). An officer cannot simply act on a hunch that the individual is violating the law or disregard known facts dispelling the suspicion. *See State v. Pike*, 551 N.W.2d 919, 922 (Minn.1996) (officer must be unaware of facts dispelling suspicion that revoked owner is driving); *State v. McKinley*, 305 Minn. 297, 304, 232 N.W.2d 906, 911 (1975) (stop may not be based on "mere whim, caprice, or idle curiosity").

■ Fiebke's seatbelt violation did not accompany an offense that made the violation enforceable. And the violation by itself did not reasonably give rise to a suspicion of illegal activity. The stop of Fiebke's car had no law enforcement purpose other than one dependent on the whim or hope of finding evidence of a nonseatbelt violation. Thus, the stop was unreasonable under the circumstances and violated Fiebke's Fourth Amendment rights.[2] Other jurisdictions

2. If the justification offered for the stop were an opportunity to warn motorists about the hazards of travelling without a seatbelt rather than the enforcement of a traffic regulation, then the con-

stitutionality of the stop might require a balancing analysis. *See Whren*, —— U.S. at ——, 116 S.Ct. at 1776; *Brown v. Texas*, 443 U.S. 47, 50–52 99 S.Ct. 2637, 2640–41, 61 L.Ed.2d 357

with similar enforcement restrictions on seatbelt offenses have reached consistent decisions. *See, e.g., Commonwealth v. Henderson,* 444 Pa.Super. 170, 663 A.2d 728 (1995) (interpreting similar statute and concluding failure to use seatbelts insufficient grounds for stop); *State v. Aderholdt,* 545 N.W.2d 559 (Iowa 1996) (failure to wear seatbelt justified traffic stop where seatbelt requirement was a citable offense).

Our interpretation of the seatbelt law is not at odds with apparent legislative intent. A review of the legislative history of Minn. Stat. § 169.686 demonstrates that the legislature specifically conditioned the seatbelt offense so a traffic stop could not be justified solely on the basis of failing to wear a seatbelt. Representative McEachern, the co-author of the amendment restricting seatbelt enforcement to moving violations, described the amendments's effect: "What it really says is that you won't be stopped on roadways if you're not wearing your seatbelt by a police officer." *House Floor Debate on S.F. No. 121* (May 8, 1987) (statement of Rep. McEachern). Representative Vellenga, the sponsor of the bill to which the amendment was attached, concurred that "under the McEachern amendment [police officers] could not stop you unless you [also] committed a traffic offense." *Id.* (statement of Rep. Vellenga). She accepted the amendment to dispel concerns "that the police officers who do stop people for not wearing their seatbelt[s] will be told that they are harassing drivers" if permitted to stop vehicles for violations of the statute. *Id.* And Representative Dempsey observed that the amendment prevented the seatbelt law from being used "as a pretext for a stop when you really have another purpose in mind * * *. The reason to make the first stop has to be something other than the seatbelt." *Id.* (statement of Rep. Dempsey).

## DECISION

The stop of the vehicle, based solely on observation of a seatbelt violation, was unreasonable under the circumstances, and evidence of the driver's license violation was properly suppressed.

**Affirmed.**

(1979); *Ascher v. Commissioner of Pub. Safety,* 519 N.W.2d 183, 185 (Minn.1994). Since the state has not submitted a stop-to-warn justification for consideration, we need not pursue that analysis.