*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A23-1038**

State of Minnesota,
Respondent,

vs.

Deshaun Arnez-Lamar Baker,
Appellant.

**Filed March 11, 2024
Affirmed
Slieter, Judge
Concurring specially, Schmidt, Judge**

Ramsey County District Court
File No. 62-CR-20-3233

Keith Ellison, Attorney General, St. Paul, Minnesota; and

John J. Choi, Ramsey County Attorney, Peter R. Marker, Assistant County Attorney, St. Paul, Minnesota (for respondent)

Shauna Kieffer, Kieffer Law LLC, Minneapolis, Minnesota (for appellant)

Considered and decided by Larson, Presiding Judge; Slieter, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**SLIETER**, Judge

In this direct appeal from a judgment of conviction of carrying a firearm without a permit, appellant argues that the district court erred in denying his suppression motion because of a law enforcement officer's mistake of law in stopping his vehicle for illegal

window tint because it was a limousine, which is exempt from the window-tint prohibition. Under the specific circumstances here, even if we assume the officer made a mistake of law the district court properly denied the suppression motion, we affirm.

**FACTS**

In the early morning of March 5, 2020, appellant Deshaun Arnez-Lamar Baker was driving a gray 2016 Chrysler 300, which is a four-door sedan, in St. Paul. A St. Paul police officer observed Baker's vehicle from his squad car, suspected the vehicle had illegal window tint,[1] and initiated a traffic stop. During the stop, the two officers who approached Baker's vehicle noticed the smell of cannabis and saw a handgun laying on the center console. Baker and the passenger were then detained while several officers searched the vehicle. As relevant to this appeal, the officers recovered two handguns and ammunition from the vehicle. Baker did not have a permit to carry a firearm in public. Respondent State of Minnesota charged Baker with carrying a firearm in public without a permit in violation of Minn. Stat. § 624.714, subd. 1a (2018).

Baker moved to suppress all evidence seized from the stop, arguing that the stop was illegal because the statute prohibiting excessive window tint does not apply to a limousine, and he asserted that the 2016 Chrysler 300 met the statutory definition of a limousine. The district court denied Baker's motion.

A photo of the vehicle Baker was driving is presented here:

---

[1] The vehicle windows were later tested for visibility, and the result was 20% visibility, which exceeds the statutory maximum window tint.



Following a stipulated facts and evidence trial, the district court found Baker guilty and entered a conviction of carrying a firearm in public without a permit and imposed a stay of imposition, placing Baker on probation for two years.

Baker appeals.

## DECISION

Baker argues that the district court erred by failing to suppress the evidence from the traffic stop based upon the officer's mistake of law in believing his vehicle was subject to the statutory window-tint restrictions. Baker concedes the tint on his vehicle's windows violated the statutory prohibition. Baker contends, however, that his vehicle is a limousine and that a limousine is explicitly exempt from the statute prohibiting excessive tinting of vehicle windows and, hence, the stop of his vehicle for window tint was illegal as a mistake of law. In doing so, Baker relies *solely* on the United States Constitution.

3

Appellate courts, when reviewing a district court's decision on a pretrial motion to suppress evidence, review the district court's factual findings for clear error and review its legal determinations *de novo*. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008). The interpretation of a statute is reviewed *de novo*. *State v. Defatte*, 928 N.W.2d 338, 340 (Minn. 2019).

The United States Constitution prohibits unreasonable searches and seizures by the government. U.S. Const. amend. IV. For a limited investigatory stop to be reasonable, a police officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). The standard for reasonable suspicion is not high, and the standard is met when a police officer "can articulate specific facts which, taken together with rational inferences from those facts, objectively support the officer's suspicion." *State v. Lugo*, 887 N.W.2d 476, 486 (Minn. 2016).

The basis for the traffic stop was the officer's suspicion that Baker's vehicle violated the window-tint statute, which reads, in relevant part,

> A person must not drive or operate any motor vehicle required to be registered in the state of Minnesota upon any street or highway under the following conditions: . . . when any side window or rear window is composed of or treated with any material so as to obstruct or substantially reduce the driver's clear view through the window or has a light transmittance of less than 50 percent plus or minus three percent in the visible light range or a luminous reflectance of more than 20 percent plus or minus three percent.

Minn. Stat. § 169.71, subd. 4 (Supp. 2019).

The statute contains several exceptions. For example, subdivision 4a provides that the prohibition "does not apply to glazing materials that . . . are applied to . . . the side and rear windows of a limousine as defined in section 168.002, subdivision 15." *Id.*, subd. 4a (Supp. 2019). Minn. Stat. § 168.002, subd. 15 (2018) defines "limousine" as "a luxury passenger automobile that has a seating capacity of not more than 15 persons, including the driver." "Luxury passenger automobile" is not defined by statute, and the definition of "limousine" has not been construed by Minnesota appellate courts.

We acknowledge the canons of construction provide us with a method to determine the definition of "luxury passenger automobile." *See State v. Thonesavanh*, 904 N.W.2d 432, 435 (Minn. 2017) (stating that the first step in statutory interpretation is to determine whether the statute is ambiguous, and if the statute is ambiguous, then courts "may apply the canons of construction to resolve the ambiguity"). However, we need not do so here. In his principal brief, Baker relied solely on *State v. George*, where the Minnesota Supreme Court applied the Fourth Amendment to the United States Constitution to conclude a mistake of law did not give rise to reasonable suspicion to support a vehicle stop. 557 N.W.2d 575, 578 (Minn. 1997). *George* does not address whether the Minnesota Constitution provides greater protections than the Fourth Amendment.

Since *George*, the United States Supreme Court has concluded that a reasonable mistake of law may provide the reasonable articulable suspicion to stop a vehicle. *Heien v. North Carolina*, 574 U.S. 54 (2014);[2] s*ee also Birkland v. Comm'r of Pub. Safety*, 940

---

[2] Neither party cited to the United States Supreme Court decision in *Heien* regarding the issue of whether a reasonable mistake of law may provide the reasonable suspicion of

5

N.W.2d 822, 826 n.1 (Minn. App. 2020) ("In neither of these cases does the supreme court base its reasoning explicitly on the Minnesota constitution and, therefore, we must apply the *Heien* decision to our vehicle-stop analysis."). Thus, even if we assume the officer made a mistake of law when he stopped Baker's vehicle, we conclude that any mistake was reasonable under the United States Constitution. Here, the officer articulated facts that objectively supported the officer's suspicion. The officer saw a vehicle—without limousine plates[3]—that had dark windows, which the officer reasonably believed violated the window-tint statute. *See* Minn. Stat. § 169.71, subd. 4(a) (2018).

For this reason, the district court properly denied suppression of the evidence seized following the lawful stop of Baker's vehicle.

**Affirmed.**

---

criminal activity to support a vehicle stop. We requested supplemental briefing from the parties on whether *Heien* applies and, if so, how. Baker's supplemental brief was the first occasion he argued that the Minnesota Constitution may be broader than the federal constitution. But an argument is not properly before this court if it was not raised in appellant's main brief or in response to an argument made in respondent's brief. *See Wood v. Diamonds Sports Bar & Grill, Inc.*, 654 N.W.2d 704, 707 (Minn. App. 2002) (applying this principal to new arguments in a reply brief), *rev. denied* (Minn. Feb. 26, 2003). Thus, we decline to consider whether the Minnesota Constitution may afford broader protections than the United States Constitution.

[3] We recognize that Minnesota law does not require a limousine to display limousine plates if the person operating the vehicle uses it for personal use. *See* Minn. Stat. § 168.128, subd. 2 (Supp. 2019). But having limousine plates would outwardly identify to law enforcement that the vehicle is exempt from the window-tint statute.

**SCHMIDT**, Judge (concurring specially)

I agree with the result. I write separately because I disagree with the majority's reasoning to reach that result.

Appellant Deshaun Arnez-Lamar Baker challenges the district court's denial of his motion to suppress, arguing the officer stopped Baker's vehicle based upon a mistake of law in believing the vehicle was subject to the statutory window-tint restrictions. The majority assumes, without deciding, that the officer made a mistake of law when he stopped Baker's vehicle because the car might have qualified for an exception to the window-tint law if the vehicle was, in fact, a limousine. The majority then affirms the district court's order denying the motion to suppress based upon a United States Supreme Court case that concluded a reasonable mistake of law may still allow for reasonable, articulable suspicion to stop a vehicle. *See Heien v. North Carolina*, 574 U.S. 54, 60-61 (2014).

I disagree that we need to even assume that the police officer stopped Baker's vehicle based upon a mistake of the law. The sole basis for stopping Baker was the officer's knowledge of Minnesota's tinted window statute and the officer's belief that Baker's vehicle violated that law. There is nothing in this record to suggest that the officer had any mistake of law. I, nonetheless, concur in the result because the officer knew about the window-tint law, articulated reasonable suspicion of criminal activity, and properly initiated a stop to further investigate the suspicion.

A limited investigatory stop is reasonable if the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968); *see also*

*Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984) (holding that if an officer has a reasonable suspicion that a person has engaged in criminal activity, the officer may make the traffic stop and "detain that person briefly in order to investigate the circumstances that provoke suspicion" (quotation omitted)). "The factual basis required to support a stop is minimal, and an actual violation is not necessary." *State v. Haataja*, 611 N.W.2d 353, 354 (Minn. App. 2000) (quotations omitted), *rev. denied* (Minn. July 25, 2000). This standard is not high. *State v. Lugo*, 887 N.W.2d 476, 486 (Minn. 2016).

The question of whether a police officer may stop a vehicle for an equipment violation has been long settled. Law enforcement has an objective basis to stop a vehicle if the officer observes a violation of a traffic law, including an insignificant equipment violation. *See State v. Pleas*, 329 N.W.2d 329, 333 (Minn. 1983) (upholding stop based on observation of a broken windshield, no front license plate, and an upside-down rear plate); *State v. Barber*, 241 N.W.2d 476, 477 (Minn. 1976) (upholding stop based on observation that license plates were attached with wires rather than bolts). Indeed, a police officer does not need to be certain that the tinted windows constitute an actual violation of the law. *Haataja*, 611 N.W.2d at 354. Nor does an officer need to have an assumption that a violation actually occurred. *See, e.g.*, *Berge v. Comm'r of Pub. Safety*, 374 N.W.2d 730, 733 (Minn. 1985) ("The trial court drew a distinction between actually seeing a violation and merely 'suspecting' one. The Court of Appeals drew a dichotomy between actually seeing a violation and 'assuming' that a violation occurred. In fact, suspicion is all that is required, if the officer can sufficiently articulate the factual basis for his suspicion."). An officer is justified to make a stop based upon the suspicion of a crime

even if the activity that the officer observes is innocent. *State v. Johnson*, 444 N.W.2d 824, 826 (Minn. 1989) (holding even "innocent activity might justify the suspicion of criminal activity") (citation omitted); *see also Terry*, 392 U.S. at 22 (holding police may initiate a stop when "a series of acts, each of them perhaps innocent" if viewed separately, "warranted further investigation" when taken together); *State v. Combs*, 398 N.W.2d 563, 565-66 (Minn. 1987) (rejecting trial court's conclusion that, if the observed facts are consistent with innocent activity, then the stop is invalid). The officer simply needs to articulate facts that reasonably provides suspicion that criminal activity is afoot.

Here, the officer articulated facts that objectively supported the officer's suspicion. The officer saw a vehicle—without limousine plates[1]—that had dark windows, which the officer reasonably believed violated the tinted window statute. *See* Minn. Stat. § 169.71, subd. 4(3) (Supp. 2019). Under the reasonable, articulable suspicion standard, the officer had the requisite suspicion to initiate a stop. At that point, the officer could then investigate further to determine whether the statutory exception applied, including whether the vehicle—without "LM" plates—qualified as a "luxury" vehicle. Minn. Stat. § 168.002, subd. 15. But at the time of the stop, the officer's reasonable belief that the windows were too dark was enough.

---

[1] Limousine plates reflect the unique registration category for limousines. Minn. Stat. § 168.128 (2020). If the vehicle had dark windows but also displayed license plates that clearly identify the vehicle as a limousine under Minnesota Statutes section 168.002, subdivision 15 (2020), then an officer's stop of the vehicle for violating the window tint statute would not be reasonable. *See* Minn. Stat. § 169.71, subd. 4a(a)(3)(iv) (Supp. 2019) (exempting the side and rear windows of a limousine from the prohibitions on glazing materials). But the vehicle in this case did not have limousine plates. As such, the officer's stop to conduct a further investigation was reasonable.

Rather than assuming it to be true, I would reject Baker's contention that the officer acted under a mistake of law. If anything, the officer had a question of *fact* as to whether Baker's vehicle was a limousine.[2] The reasonable, articulable suspicion standard allows the officer to investigate that fact question by stopping the vehicle and investigating.

Analyzing this case under mistake of law jurisprudence is problematic for several reasons. First, the analysis fails to recognize the long-standing reasonable, articulable suspicion caselaw that allows the officer to make a stop after articulating facts that reasonably support the suspicion of illegal activity. Second, the analysis fails to recognize that after making the stop, the officer may investigate to confirm whether the initial suspicion continues to be correct. Finally, the analysis fails to account for the potential ramifications of its reasoning. The practical effect of following the mistake-of-law reasoning to its logical conclusion means an officer may only stop a vehicle under suspicion of a statutory window-tint violation—without having a mistaken belief of the law—if the officer (1) believes the vehicle's windows are too dark such that the window-tint statute may be violated, *and* (2) the officer eliminates the statutory exception regarding limousines before making the stop. At the time of a stop, police will have to articulate reasons why the vehicle—without limousine plates—is not a "luxury" vehicle. That holding requires a degree of certainty that is not found in the law.

---

[2] Notably, there is nothing in this record to demonstrate that at the time of the stop Baker said he was driving a limousine. This is not to say a defendant must affirmatively assert the limousine exception during a stop. The issue can, as it was here, be raised for the first time at the district court. But, in this case, the officer's suspicion in making the initial stop was not dispelled during the subsequent investigation, which eventually led to the discovery of a gun and drugs.

In sum, I disagree with the majority assuming a mistake of law and affirming under a mistake-of-law analysis. Such an analysis is unnecessary if the officer had reasonable, articulable suspicion for the stop. Under settled, longstanding caselaw, the officer had the requisite suspicion—based upon the officer's unmistaken belief of the law—to make the stop. I would affirm because the district court applied the correct standard to conclude the officer had reasonable, articulable suspicion to initiate the stop.