**STATE of Minnesota, Respondent,**

v.

**Launair Gerard BRITTON,
petitioner, Appellant.**

**No. C9–98–968.**

Supreme Court of Minnesota.

Jan. 13, 2000.

John M. Stuart, State Public Defender, Theodora Gaitas, Asst. State Public Defender, Minneapolis, for appellant.

Michael A. Hatch, Attorney General, St. Paul, Jay Heffern, Minneapolis City Attorney, Paula J. Kruchowski, Asst. Minne-

apolis City Attorney, Minneapolis, for respondent.

## OPINION

LANCASTER, Justice.

Appellant was driving a friend's car when he was pulled over by Minneapolis police officers, who suspected the car was stolen because it had a broken side window. We hold that the stop violated constitutional protections against unreasonable search and seizure and reverse the court of appeals' opinion affirming the trial court.

At approximately 11:00 p.m. on March 3, 1998, two Minneapolis police officers, on routine patrol in North Minneapolis, noticed a 1989 Oldsmobile Cutlass with a broken driver-side rear passenger window covered with a plastic bag. Suspecting that the vehicle may have been stolen, the officers began to follow it.

While they were following the vehicle, the officers checked their computer to determine whether it was listed as stolen, and learned it was not. After following the vehicle for approximately four blocks, noticing no unusual or suspicious driving conduct, the officers stopped the vehicle, reporting to dispatch that they were stopping a "suspicious vehicle."

The officers approached the vehicle and questioned the driver, later identified as Launair Gerard Britton. They noticed signs that Britton was intoxicated. The officers also noted two passengers in the vehicle: the owner of the vehicle, and a 12-year-old child. The officers arrested Britton. A blood alcohol test showed Britton's blood alcohol content exceeded the legal limit.

On March 5, 1998, Britton was charged in Hennepin County District Court with an aggravated driving violation, driving with an alcohol concentration over .20 – child endangerment under Minn.Stat. § 169.121, subds. 1(f), 3(d)(1) (1996) and other driving offenses.

Britton brought a motion to suppress any evidence obtained from the traffic stop, claiming the stop violated the Fourth Amendment of the United States Constitution; Article I, Section 10 of the Minnesota Constitution.[1] The sole witness called during the suppression hearing was one of the arresting officers, who testified to the basis and nature of his suspicion that the vehicle in question was stolen.

The officer testified that on March 3, 1998, he and his partner were on routine patrol when they saw the Oldsmobile Cutlass and noticed the broken window and the plastic covering on the window. He further testified that in his experience the broken window was an indication that the vehicle may have been stolen, as breaking a window is "a common practice for stealing vehicles." He stated that he had been involved in the recovery of 10 to 20 stolen cars with broken windows.

The officer also explained that the computer check he and his partner ran to see if the vehicle had been reported stolen did not dispel their suspicion that the vehicle was stolen. He noted that because owners are frequently delayed in discovering a theft, stolen vehicles often are not reported for several hours or even days after the actual theft. He said this was especially true on his watch ("dog-watch" – 8:00 p.m. to 4:00 a.m.), as owners often do not discover the thefts until the following morning. The officer estimated that he had been personally involved in the recovery of approximately ten such unreported, "fresh stolen" vehicles, although there was no

---

1. Article I, Section 10 of the Minnesota Constitution provides "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated" and is identical to the provision against unreasonable searches and seizures found in the Fourth Amendment to the United States Constitution. *See* U.S. Const. amend. IV.

testimony about whether any of those vehicles had broken windows. The officer stated that the only basis for this stop was his belief that the vehicle Britton was driving was stolen, based on his observation of the broken and plastic-covered window.

Based on the officer's testimony, the district court ruled that the stop was based on something "more than whim or .caprice," and accordingly was proper under the United States and Minnesota Constitutions and the evidence obtained during the stop was admissible.

After this ruling, Britton waived his right to a trial by jury and submitted the matter to the court for trial on stipulated facts. The district court found Britton guilty of enhanced gross misdemeanor, driving with an alcohol concentration of more than .20/child endangerment.

Britton appealed. In an unpublished decision, the Minnesota Court of Appeals held that the officer's testimony provided sufficient evidence of a reasonable basis for the stop and that the evidence was therefore properly admitted. *State v. Britton,* No. C9–98–968, 1999 WL 43322, *1 (Minn. Feb. 2, 1999). In his dissent, Judge Foley opined that the reasons offered in the officer's testimony were not sufficient to constitute a "reasonable articulable suspicion" of ongoing criminal activity. *See id.* at *2 (Foley, J., dissenting).

■ In reviewing a district court's determinations of the legality of a limited investigatory stop, we review questions of reasonable suspicion de novo. *See State v. Munson,* 594 N.W.2d 128, 135 (Minn.1999). In doing so, we review findings of fact for clear error, "giving due weight to the inferences drawn from those facts by the district court." *State v. Lee,* 585 N.W.2d 378, 383 (Minn.1998) (citing *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

■ In this case, the police stopped Britton to investigate whether the vehicle he was driving was stolen. Such limited stops to investigate suspected criminal ac-

tivity are commonly known as *Terry* stops. *See generally Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Terry* held that the Fourth Amendment of the United States Constitution applies to investigative stops by the police. *Id.* at 16–17, 88 S.Ct. 1868. *Terry* and its progeny allow the police to conduct limited stops to investigate suspected criminal activity when the police can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Id.* at 21, 88 S.Ct. 1868. To justify a stop an officer must be able to state something more than an unarticulated "hunch"; the officer must be able to point to something objectively supporting that suspicion. *See United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989); *accord State v. Johnson,* 257 N.W.2d 308, 309 (Minn.1977). We have stated that a *Terry*-type stop "must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *State v. George,* 557 N.W.2d 575, 578 (Minn.1997) (citing *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). In deciding the propriety of investigative stops, we review the events surrounding the stop and consider the totality of the circumstances in determining whether the police had a reasonable basis justifying the stop. *See Cortez,* 449 U.S. at 417, 101 S.Ct. 690.

Appellant first argues that the police did not have a reasonable suspicion sufficient to justify the stop before they checked the computer. Second, he argues that even if such suspicion did exist, it was conclusively dispelled once the computer check revealed that the Cutlass was not listed as stolen.

■ We address appellant's second argument first. He maintains that a reasonable suspicion, if any, would have been dispelled by the computer check that did not show the Cutlass reported stolen. We agree with the court of appeals that that

argument and appellant's reliance on *State v. Pike* is misplaced. *See generally* 551 N.W.2d 919 (Minn.1996). In *State v. Pike*, we stated that reasonable suspicion, if actually dispelled by further investigation prior to the stop, does not justify a *Terry*-type seizure. *See id.* at 922. Here, the officer explained why the check did *not* dispel his suspicion. He testified that in his experience many stolen vehicles often go undiscovered and unreported overnight and sometimes for several days. Such stolen but undiscovered, unreported vehicles are termed by police "fresh stolen." Therefore, under the circumstances of this case, the computer check would not necessarily have detracted from any reasonable suspicion that the Cutlass was stolen, although it obviously did not add to it either.

■ The insurmountable difficulty for the state in this case is that it did not show an objectively reasonable articulable suspicion on the part of the officer before the computer check.

A thorough review of the transcript of the *Rasmussen* hearing convinces us that the appellant was stopped because he was driving a car with a broken window and for no other reason. That the window was covered with plastic seems neither to have added nor subtracted from the suspicion raised by the broken window. The officer testified that there was plastic covering the window, but there was no testimony about how that fact contributed to the officer's suspicion of whether the car was "fresh stolen," except the following ambiguous exchange.

Q Did the fact that there was a bag covering the window do anything to abet your suspicions?

A Yes. That's a common way of covering up the window, and also the plastic bag obstructs the view for the driver.

That testimony sheds no light on whether thieves or victims are more likely to have put plastic over broken car windows. In any event, the testimony established that it was not the plastic that gave rise to the officer's suspicion, but the broken window itself.

■ Accepting as true that many stolen vehicles have broken windows, does it follow that a broken window alone gives rise to an objectively reasonable suspicion that criminal activity is afoot whenever a car with a broken window is seen? Our task is not to decide whether the particular officer's suspicion was genuine (and in fact we can easily accept that it was); rather, we examine whether the suspicion was objectively reasonable. "If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers, and effects,' only in the discretion of the police." *Terry v. Ohio*, 392 U.S. at 22, 88 S.Ct. 1868 (quoting *Beck v. Ohio*, 379 U.S. 89, 97, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)).

■ The officer testified that "[o]ften times windows are broken to gain entry to vehicles to either steal from the inside of the vehicle or to steal the vehicle itself." (Emphasis added.) There was no indication of how or why the officer concluded that the window indicated that the Cutlass itself had been stolen as opposed to having had its contents stolen. Even if the car (or its contents) had been stolen, there is nothing in the record to indicate why the officer came to the conclusion – if he did – that the car was currently occupied by a perpetrator as opposed to a victim.[2] The officer saw the window in terms of crime, but of course a window can also be broken by accident or even, we suppose, by an owner who locked his keys in the vehicle. As one court recently observed, broken windows are a fact of urban life. *See People v. Elam*, 179 A.D.2d 229, 232, 584 N.Y.S.2d 780 (1992). We are deferential to police officer training and experience

---

**2.** Interestingly, the record indicates that the Cutlass in fact had been stolen, recovered, and was now back in the possession of its

rightful owner, who was in the passenger seat when the officers made their stop.

and recognize that a trained officer can properly act on suspicion that would elude an untrained eye. *See State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 569–70 (Minn.1994). It is also true that wholly lawful conduct might justify the suspicion that criminal activity is afoot. *See United States v. Sokolow*, 490 U.S. at 10, 109 S.Ct. 1581. However, in this case, the officer's stated rationale for stopping this car would support stopping any car at all with a broken window. There does not appear, in the record before us, to have been an assessment based on training or experience that this particular broken window indicated that the vehicle was stolen.

The state argues that this case is indistinguishable from *State v. Barber*, 308 Minn. 204, 241 N.W.2d 476 (1976). In *Barber*, a police officer's observation of license plates attached to a vehicle in an unusual manner (with wire, not bolts), was sufficient to support a reasonable suspicion that the vehicle may have been stolen. *See* 308 Minn. at 205, 241 N.W.2d at 477. We acknowledged that such an attachment by itself did not constitute a violation and that no other violations were observed. *See id.* We noted that:

> [p]olice and patrol officers from their experience learn to be on the lookout for things such as this *because the appearance of license plates * * * often suggests that the plates do not belong to the vehicle.*

*Id.* (emphasis added). License plates are the primary means by which the police may identify a vehicle and its owner. Evidence of tampering or unauthorized replacement of license plates, or other indications that the vehicle's occupants are attempting to conceal their identity, or the ownership of the vehicle, can be suggestive of ongoing criminal activity in a way that a broken window is not. We have previously upheld stops based on evasive driver conduct. *See, e.g., State v. Johnson*, 444 N.W.2d 824, 827 (Minn.1989). We are not persuaded that our holding in *Barber* dictates the outcome in this matter.

We see no evidence in this record of circumstances that taken alone or in combination are sufficient to warrant the investigative stop of appellant. Accordingly, we hold that this record is insufficient to support the trial court's conclusion that the stop was based on a reasonable and articulable suspicion of ongoing criminal activity. Therefore, admission of evidence obtained as a result of the stop was error.

Reversed.

GILBERT, Justice (dissenting).

I respectfully dissent. The majority misstates what articulable, reasonable suspicion requires and improperly discredits the police officer's testimony and experience. The majority opinion creates confusion by accepting some of the police officer's testimony as being valid based on his experience then disregarding other portions without offering any explanation for the distinction. Further, if *State v. Barber*, 308 Minn. 204, 241 N.W.2d 476 (1976) was correctly decided, stare decisis should compel this court to affirm the court of appeals. Because it is not distinguishable, the majority's opinion effectively overrules *Barber* without explicitly stating so. Such a holding creates confusion for law enforcement officers rather than giving clear direction from this court as to what standard governs police behavior in *Terry*-stops.

As for whether the officer's computer check would dispel any reasonable suspicion if such did exist, the majority holds no. That is significant because in *State v. Pike*, 551 N.W.2d 919, 922 (Minn.1996), we held that if an officer gathers facts which render his suspicion unreasonable, the *Terry*-stop is unconstitutional. In so holding, the court accepts as reliable the testimony of the arresting officer. The majority emphasizes that the officer testified that the computer check "did *not* dispel his suspicion." (emphasis in original). Further, the majority notes the reason that it did not dispel his suspicion was that "in his

experience many stolen vehicles often go undiscovered and unreported" for hours or even days. Again, the majority accepts as reliable the officer's testimony with respect to "fresh stolen" vehicles.

Yet in deciding whether the officer's observation of the broken, covered, side window would support a finding of reasonable suspicion, the majority summarily dismisses the same officer's testimony. It refuses to give any credit to the officer's testimony regarding his experience, which would provide support to a finding of reasonableness. The majority disregards this portion of the officer's experience, in spite of the fact that the officer testified to having personally recovered 10–20 stolen vehicles with broken windows and 10 freshly stolen vehicles. Further, the officer testified that "the majority of cars [the police] recover have either a broken wing window or a broken window."

In light of the reliance on the officer's testimony and credibility with respect to the computer check, the majority's position with respect to the officer's experience with broken windows and stolen cars and the inferences and conclusions which can be drawn from that experience is wholly inconsistent. As the majority notes, this court has recently highlighted our deference to police officer experience and our recognition of their discretion to act on that experience. *See State by Beaulieu v. City of Mounds View,* 518 N.W.2d 567, 569–70 (Minn.1994). The *Terry* court also directed the courts to consider the officer's experience: "in determining whether the officer acted reasonably in such circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inference which he is entitled to draw from the facts *in light of his experience.*" *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (emphasis added). The majority now gives this deference and consideration only lip service when it disregards the officer's sworn testimony that in his experience a broken side window indi-

cates the possibility that the automobile is stolen.

Further, the majority simply overstates what reasonable, articulable suspicion requires. It does not require the officer to discount "the other numerous and legitimate explanations" for the facts which create suspicion in the mind of the officer. Rather, it requires the officer to articulate specific facts, and rational inferences from those facts which taken together will justify the stop. *See id.* at 21, 88 S.Ct. at 880. "The officer need not be absolutely certain," nor is he required to be, so long as it is reasonable for him to conclude that "criminal activity *may* be afoot." *Id.* at 27, 30, 88 S.Ct. 1868 (emphasis added). Thus, it should not affect the legality of the stop that some cars with broken windows are not stolen.

In addition, contrary to the majority's assertion, our holding in *Barber,* 308 Minn. at 207, 241 N.W.2d at 477, should control the outcome in this case. The facts in *Barber* relating to objective indicia and reasonable inferences are logically indistinguishable from this record and our reasoning in *Barber* is directly applicable to this case. In order to reach a contrary result, the majority reads in another reason for the holding in *Barber* that is not supported by a careful reading of *Terry*-stop cases and *Barber* itself. In *Barber,* we held that an officer had articulable, reasonable suspicion to stop an automobile when the officer observed that the automobile's license plates were wired on by bailing wire rather than bolted on, even though that conduct was legal. The holding did not rest, as the majority suggests, on the premise that efforts to conceal one's identity and avoid police detection are more acutely or particularly suspect than other criminal activity and therefore, justify a *Terry*-type stop. Instead, *Barber*'s holding rested on the fact that certain objective indicia can trigger in the mind of the police officer a suspicion that there is criminal activity afoot. We held that even if

lawful activity was involved, "the facts, together with the reasonable inferences an experienced police officer could draw therefrom," may lead to the inference that "the plates do not belong to the vehicle," and thus, criminal activity is afoot. *Id.* at 477.

In deciding *Barber,* we had to distinguish a case decided just a year before, *State v. McKinley,* 305 Minn. 297, 232 N.W.2d 906 (1975), in which we held that a *Terry*-stop was not reasonable. In doing so, we emphasized that the officers in *Barber* had knowledge of a fact, the bailing wire, which raised their suspicions of ongoing criminal activity due to their experience as police officers. In contrast, in *McKinley,* the officers had "no specific and articulable facts" which justified their stop of the defendant. *McKinley,* 232 N.W.2d at 910. Instead, the officers in *McKinley* had observed the defendant "driving [his] automobile in a lawful manner and within the 10–miles–per hour alley speed limit prescribed by city ordinance," and after "seiz[ing]" him by summoning him and then putting him in the backseat of the squad car, subjected him to a license check. *Id.* at 908.

. This case is not like *McKinley* where there were no specific and articulable facts that raised the suspicions of the officer. Instead, this case is logically indistinguishable from *Barber.* In *Barber,* we noted that "[p]olice and patrol officers from their experience learn to be on the lookout for things such as [license plates held on by bailing wire] because they may suggest criminal activity." The same logic applies here. The police officers learned from their experience to be on the lookout for broken automobile windows because as the officer in this case testified, it may, as it had in the past for this officer, suggest criminal activity, that the car is stolen. I would affirm the court of appeals.

BLATZ, Chief Justice (dissenting).

I join in the dissent of Justice GILBERT.

RUSSELL A. ANDERSON, Justice (dissenting).

I join in the dissent of Justice GILBERT.