*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1550**

State of Minnesota,
Appellant,

vs.

Stephanie Evon Glover,
Respondent.

**Filed March 16, 2015
Reversed
Johnson, Judge**

Hennepin County District Court
File No. 27-CR-13-42196

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Susan L. Segal, Minneapolis City Attorney, Zenaida Chico, Assistant City Attorney, Minneapolis, Minnesota (for appellant)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Minnesota; and

Matthew J. Mankey, Special Assistant Public Defender, Golden Valley, Minnesota (for respondent)

Considered and decided by Halbrooks, Presiding Judge; Johnson, Judge; and Larkin, Judge.

UNPUBLISHED OPINION

**JOHNSON**, Judge

Stephanie Evon Glover is charged with fourth-degree driving while impaired. Evidence of her impairment was obtained after a police officer stopped her vehicle on suspicion of a window-tint violation. The district court granted Glover's motion to suppress the evidence obtained during the stop. The state appeals the pre-trial ruling. We conclude that the district court erred by concluding that the officer did not have a reasonable, articulable suspicion that Glover committed a violation of the window-tint statute. Therefore, we reverse.

## FACTS

On the evening of December 27, 2013, at 10:41 p.m., police officer Matthew Olson was stopped at a stoplight in the westbound lane of Dowling Avenue North in Minneapolis, on the overpass above interstate highway 94. While stopped there, he saw an oncoming car turn right and go down the ramp that leads to southbound I-94. As the car drove in front of him, Officer Olson observed that "the window tint on the vehicle was too dark." Officer Olson followed the vehicle down the ramp onto I-94 and activated his squad car's lights to stop the vehicle. After the vehicle pulled over to the shoulder, Officer Olson approached the vehicle to speak with the driver, Glover. Officer Olson arrested Glover on suspicion of driving while impaired (DWI).

The state charged Glover with fourth-degree DWI. *See* Minn. Stat. §§ 169A.20, subd. 1(5), 169A.27, subd. 1 (2012). In April 2014, Glover moved to suppress the evidence obtained during the stop on the ground that Officer Olson did not have a

reasonable, articulable suspicion to justify the stop. In August 2014, the district court conducted an evidentiary hearing at which Officer Olson testified for the state and Glover testified on her own behalf. At the conclusion of the hearing, the district court orally granted Glover's motion and suppressed all evidence obtained during the stop. The state requested a written ruling on the motion, which the district court filed seven days later. *See* Minn. R. Crim. P. 11.07. The state appeals.

### DECISION

The state argues that the district court erred by granting Glover's motion to suppress evidence. The state contends that Officer Olson had a legitimate reason to stop Glover's vehicle based on his reasonable suspicion that the vehicle was in violation of the state statute regulating tinted windows. If the state appeals from a pre-trial order, "the state must clearly and unequivocally show . . . that the trial court's order will have a critical impact on the state's ability to prosecute the defendant successfully." *State v. Barrett*, 694 N.W.2d 783, 787 (Minn. 2005) (quotations omitted). Glover concedes that the district court's suppression order has a critical impact on the prosecution.

The Fourth Amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV; *see also* Minn. Const. art. I, § 10. The Fourth Amendment also protects the right of the people to be secure in their motor vehicles. *See State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). As a general rule, a law-enforcement officer may not seize a person traveling in a vehicle without probable cause. *State v. Flowers*, 734 N.W.2d 239, 248 (Minn. 2007).

3

A law-enforcement officer may, however, "'consistent with the Fourth Amendment, conduct a brief, investigatory stop'" of a motor vehicle if "'the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *State v. Timberlake*, 744 N.W.2d 390, 393 (Minn. 2008) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 675 (2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884-85 (1968))). A reasonable suspicion exists if, "in justifying the particular intrusion the police officer [is] able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. The reasonable-suspicion standard is not high, but the suspicion must be "something more than an unarticulated hunch," *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007) (quotation omitted), and more than an "inchoate and unparticularized suspicion," *Timberlake*, 744 N.W.2d at 393 (quotation omitted). An officer "must be able to point to something that objectively supports the suspicion at issue." *Davis*, 732 N.W.2d at 182 (quotation omitted); *see also Terry*, 392 N.W.2d at 22, 88 S. Ct. at 1880. Even the commission of a minor traffic violation can provide the necessary reasonable suspicion for a traffic stop. *See State v. George*, 557 N.W.2d 575, 578 (Minn. 1997); *Berge v. Commissioner of Public Safety*, 374 N.W.2d 730, 732-33 (Minn. 1985).

When analyzing whether a stop is justified, a district court should consider "the totality of the circumstances and acknowledge that trained law enforcement officers are permitted to make inferences and deductions that would be beyond the competence of an untrained person." *State v. Richardson*, 622 N.W.2d 823, 825 (Minn. 2001). A district court must be "deferential to police officer training and experience and recognize that a

4

trained officer can properly act on suspicion that would elude an untrained eye." *Britton*, 604 N.W.2d at 88-89. This court applies a *de novo* standard of review to a district court's determination as to whether a law-enforcement officer had reasonable suspicion to initiate a traffic stop. *Id*. at 87.

In this case, Officer Olson testified that, before stopping Glover, he had measured the tint on "hundreds" of vehicle windows. He testified that, as Glover's vehicle passed in front of him, he saw the side windows of the car and estimated their tint to be approximately 35%. After he arrested Glover but before her car was towed away, Officer Olson measured the window tint with a tint-meter, which electronically measures the light transmittance of glass. Officer Olson's tint-meter confirmed his suspicion of a statutory violation by indicating a tint on the driver's side window of 39%, which is 8% darker than the darkest permissible tint of 31%. *See* Minn. Stat. § 169.71, subd. 4(a)(3) (2012).

The district court concluded that the facts known to Officer Olson did not rise to the level of reasonable suspicion required by law. In its order, the district court found that "there was not sufficient reasonable articulable suspicion for this traffic stop." The district court reasoned that, because of the time of night, "it stands to reason that an 8% difference in window tint would be undetectable when viewed for a few seconds across the street while a vehicle is moving." The district court also reasoned, "At most, the officer could have a 'hunch' or 'curiosity' as to the illegal level of tint." The district court further reasoned that window tint is "subjective" and that "the tint level of the window, while darker than allowed, was only slightly darker . . . , reinforcing further that

5

there would be no way to know if the tint was in fact too dark until further testing confirmed it." The district court concluded that the "stop for a slight window tint violation is not reasonable enough for the reasonable, articulable suspicion standard."

The district court's ruling is inconsistent with Officer Olson's testimony, which consists of "specific and articulable facts" that establish a reasonable suspicion of a violation of the window-tint statute. *See Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. In light of Officer Olson's experience with window tints, he had "more than an unarticulated hunch," *see Davis*, 732 N.W.2d at 182 (quotation omitted), and more than an "inchoate and unparticularized suspicion," *see Timberlake*, 744 N.W.2d at 393 (quotation omitted). The district court's reasoning is not supported by any evidence in the record as to whether it is possible for a trained and experienced law-enforcement officer to visually detect a window-tint violation in a passing car. The district court's reasoning is inconsistent with the caselaw that requires deference to "police officer training and experience" and an acknowledgment that "a trained officer can properly act on suspicion that would elude an untrained eye." *See Britton*, 604 N.W.2d at 88-89. Furthermore, the district court's reasoning is inconsistent with the concept of reasonable suspicion, which is "less demanding than the standard for probable cause" and requires only "a minimal level of objective justification for making the stop." *See State v. Diede*, 795 N.W.2d 836, 843 (Minn. 2011) (quotations omitted).

Suppression might have been appropriate if the district court had found that Officer Olson was not credible, but the district court did not so find. In fact, the district court declined an opportunity to rest its ruling on a lack of credibility. Near the end of

6

the suppression hearing, the prosecutor asked the district court whether the district court had determined that Officer Olson is not credible. The district court did not state that Officer Olson's testimony about his reason for stopping Glover is not credible; instead, the district court replied that Officer Olson "may not have been able to recollect the facts of that night." But the district court's order relies extensively on Officer Olson's testimony and specifically notes only one inconsistency between Officer Olson's testimony and Glover's testimony, which concerns a minor detail occurring after Officer Olson stopped Glover.

In light of the record, we are unable to infer that the district court found Officer Olson's testimony concerning the reason for the stop to be not credible. As a general matter, this court does not make credibility determinations because this court does not make findings of fact on appeal and because credibility is a matter for which the district courts are especially well suited. *See Fletcher v. St. Paul Pioneer Press*, 589 N.W.2d 96, 102 (Minn. 1999); *State v. Jones*, 566 N.W.2d 317, 325 (Minn. 1997). We occasionally have recognized an implied finding of credibility or lack of credibility in a district court's ruling, but only in cases in which there was conflicting testimony from two or more witnesses and in which the district court's legal reasoning obviously is based on the testimony of one witness but not another. *See, e.g.*, *Umphlett v. Commissioner of Pub. Safety*, 533 N.W.2d 636, 639 (Minn. App. 1995), *review denied* (Minn. Aug. 30, 1995); *Thuma v. Kroschel*, 506 N.W.2d 14, 17-19 (Minn. App. 1993), *review denied* (Minn. Dec. 14, 1993). In this case, however, Officer Olson provided the only testimony relevant to the reason for the stop, and the basis for the district court's decision is unclear.

7

In light of the record and the district court's rationale, we cannot imply a finding that Officer Olson was not credible. *See State v. Kvam*, 336 N.W.2d 525, 529 (Minn. 1983) (declining to imply finding of lack of credibility in light of officer's undisputed testimony). In the absence of a finding of lack of credibility, we assume the truth of Officer Olson's testimony, which clearly expresses a reasonable, articulable suspicion of a violation of the window-tint statute.

In sum, the district court erred by granting Glover's motion to suppress evidence.

**Reversed.**