*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0784**

State of Minnesota,
Respondent,

vs.

Shuly Marambo,
Appellant.

**Filed March 21, 2016
Affirmed
Rodenberg, Judge**

Hennepin County District Court
File No. 27-CR-14-1798

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Jane N.B. Holzer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Julie Loftus Nelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Rodenberg, Presiding Judge; Larkin, Judge; and Hooten, Judge.

## U N P U B L I S H E D   O P I N I O N

**RODENBERG**, Judge

On appeal from his conviction of being a prohibited person in possession of a firearm, appellant Shuly Marambo argues that the police officer who seized him

(1) lacked reasonable, articulable suspicion to stop him, and (2) conducted an impermissible pat-search. We affirm.

## FACTS

On January 18, 2014, at approximately 2:00 a.m., St. Louis Park police officers were patrolling near an apartment complex at which there had been recent burglaries. From approximately 15 yards away, the officers saw two men pulling on the back door of an apartment complex. The two men walked away when they noticed the officers. One officer yelled "police, stop." The two men began running away. One officer pursued the men, but eventually lost sight of them after they split up. When the officers inspected the scene, they observed fresh footprints in the snow near the apartment windows, which they believed indicated a possible burglary attempt.

Suspecting an attempted burglary, the officers called for back-up to set up a perimeter around the area. Officer Peterson, serving as back-up, received word that one of the fleeing suspects was a black man wearing a dark jacket and dark pants. From his squad car, Officer Peterson observed appellant, a black man who was wearing a black and red jacket and dark pants, walking about a quarter mile from the apartment complex. Appellant seemed to notice Officer Peterson's squad car, and he then turned and walked the other way.

Officer Peterson drove his squad car to a position alongside appellant. He recognized appellant from previous 911 calls. Officer Peterson also knew appellant was the subject of two officer-safety messages, which indicated that appellant had been involved in felony-level criminal activity. Those were the only two officer-safety

2

messages that Officer Peterson had ever seen. He also knew that appellant had "the ability to be combative and uncooperative with the officers" from previous interactions with a juvenile probation officer. Officer Peterson stopped appellant, suspecting that he might be one of the attempted-burglary suspects. He pat-searched appellant and found a loaded handgun.

Because appellant had been convicted of second-degree burglary in 2013, he was ineligible to possess a firearm, and the state charged him accordingly under Minn. Stat. § 624.713, subd. 1(2), 2(b) (2012). Appellant moved to suppress the state's evidence, arguing that Officer Peterson did not have a reasonable, articulable basis to stop and search him. Following a *Rasmussen* hearing, the district court denied appellant's motion. Appellant waived his right to a jury trial, and the parties proceeded under Minn. R. Crim. P. 26.01, subd. 3. The district court found appellant guilty. This appeal followed.

**D E C I S I O N**

Appellant challenges the district court's denial of his pretrial suppression motion, arguing that the officer (1) lacked reasonable, articulable suspicion to stop appellant, and (2) conducted an impermissible pat-search. When reviewing a district court's denial of a suppression motion, we review the district court's factual findings for clear error and its legal conclusions de novo. *State v. Gauster*, 752 N.W.2d 496, 502 (Minn. 2008).

**I.      The *Terry* stop was lawful.**

Appellant argues that the officer did not have a reasonable, articulable suspicion to stop him. We review de novo whether an officer had reasonable suspicion for a warrantless *Terry* stop. *In re Welfare of G.M.*, 560 N.W.2d 687, 690 (Minn. 1997).

3

Both the Fourth Amendment of the United States Constitution and Article I, Section 10, of the Minnesota Constitution prohibit unreasonable searches and seizures. Warrantless searches and seizures are generally considered unreasonable. *State v. Munson*, 594 N.W.2d 128, 135 (Minn. 1999). Courts will suppress evidence acquired from a warrantless search unless an exception to the warrant requirement applies. *State v. Metz*, 422 N.W.2d 754, 756 (Minn. App. 1988).

Without a warrant, a police officer may make a limited investigative stop if the officer has a reasonable, articulable suspicion that the person stopped is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880 (1968). The *Terry* standard requires "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007) (quoting *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880). "The requisite showing is not high." *Id*. (quotation omitted). The officer, however, must be able to point to facts that objectively support the suspicion and cannot base it on a mere unarticulated hunch. *Id*. "We consider the totality of the circumstances when determining whether a reasonable, articulable suspicion exists . . . ." *Davis*, 732 N.W.2d at 182. "These circumstances include the officer's general knowledge and experience, the officer's personal observations, information the officer has received from other sources, the nature of the offense suspected, the time, the location, and anything else that is relevant." *Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987). An officer may also make inferences based on the officer's law-enforcement training. *State v. Syhavong*, 661 N.W.2d 278, 282 (Minn. App. 2003).

Here, multiple facts support Officer Peterson's suspicion that appellant was engaged in criminal activity. He received a description of one possible attempted-burglary suspect, generally matching appellant's appearance that night. Two attempted-burglary suspects had fled from officers. Around 10 minutes later, Officer Peterson encountered appellant approximately a quarter mile from the site of the attempted burglary. Appellant was walking in an area and at a time of night where there were generally no other pedestrians. Appellant turned and began walking in the opposite direction when he appeared to have first seen Officer Peterson's squad car. Officer Peterson recognized appellant from previous police calls and officer-safety messages.

These facts, taken together, establish that Officer Peterson did not stop appellant on a mere whim. The totality of the circumstances supports Officer Peterson's reasonable, articulable suspicion that appellant was engaged in criminal activity. The *Terry* stop was therefore lawful.

## II. The *Terry* pat-search was lawful.

Appellant argues that, even if the officer had a reasonable suspicion to stop appellant, the pat-search was impermissible. A police officer may pat-search an individual if the officer has a "reasonable, articulable suspicion that [the individual] might be engaged in criminal activity" and "reasonably believes [that the individual] might be armed and dangerous." *State v. Dickerson*, 481 N.W.2d 840, 843 (Minn. 1992) (citing *Terry*, 392 U.S. at 30, 88 S. Ct. at 1884). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation

5

without fear of violence . . . ." *Adams v. Williams*, 407 U.S. 143, 146, 92 S. Ct. 1921, 1923 (1972).

Before conducting a *Terry* pat-search, an officer must have reasonable suspicion "based on specific, articulable facts" and a "particularized and objective basis for suspecting the seized person of criminal activity." *State v. Cripps*, 533 N.W.2d 388, 391 (Minn. 1995). Courts "are deferential to police officer training and experience and recognize that a trained officer can properly act on suspicion that would elude an untrained eye." *State v. Britton*, 604 N.W.2d 84, 88-89 (Minn. 2000). The Minnesota Supreme Court has held that when an officer stops a person on the basis of an articulable suspicion of a violent crime, the officer has the "immediate and automatic" right to pat-search that person for weapons. *State v. Payne*, 406 N.W.2d 511, 513 (Minn. 1987).

Here, Officer Peterson stopped appellant on suspicion of burglary, a potentially violent crime. *See* Minn. Stat. § 624.712, subd. 5 (2014) (listing first- and second-degree burglary as crimes of violence). As a result, he had an "immediate and automatic" right to pat-search appellant for weapons.

Moreover, Officer Peterson was alone when he first encountered appellant, recognized him from prior contacts, knew him as the subject of two officer-safety messages, and knew that appellant could be "combative and uncooperative." The totality of the circumstances supports the officer's reasonable belief that appellant might be engaged in criminal activity and might be armed. The *Terry* pat-search was therefore lawful.

The district court correctly determined that the evidence seized from appellant was not obtained in violation of appellant's rights. It did not err in denying appellant's suppression motion.

**Affirmed.**