*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1859**

State of Minnesota,
Respondent,

vs.

Robert Frederick Smart,
Appellant

**Filed August 29, 2016
Affirmed
Worke, Judge**

Hennepin County District Court
File No. 27-CR-14-33018, 27-CV-14-18854

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Amy B. Schutt, Alina Schwartz, Campbell Knutson, P.A., Eagan, Minnesota (for respondent)

Barry S. Edwards, Barry S. Edwards Law Office, Minneapolis, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Ross, Judge; and Connolly, Judge.

## U N P U B L I S H E D   O P I N I O N

**WORKE**, Judge

Appellant challenges his test-refusal conviction, arguing that the stop of his vehicle was not based on reasonable, articulable suspicion and that Minnesota's test-refusal statute is unconstitutional. We affirm.

# FACTS

At approximately 1:34 a.m. on November 10, 2014, Plymouth Police Officer Amy Therkelsen was dispatched to a residence. The reporting party stated that five people were fighting in a parking lot before four of them got into a small black car and traveled east on 14th Avenue.

En route to the reported address, Officer Therkelsen observed a small black sedan occupied by at least four people traveling east on County Road 6. County Road 6 runs parallel with and is approximately one block north of 14th Avenue. Officer Therkelsen observed the vehicle three minutes after receiving the call, and there were no other vehicles on the road at that time. Officer Therkelsen stopped the vehicle and identified the driver, appellant Robert Frederick Smart. The stop occurred less than one mile from the residence.

After approaching the vehicle, Officer Therkelsen detected a strong odor of an alcoholic beverage and observed that Smart's eyes were bloodshot and watery. Smart was arrested after unsuccessfully attempting field sobriety tests. Officer Therkelsen read the implied-consent advisory to Smart, and Smart refused to take a breath test.

Smart was charged with third-degree refusal to submit to a chemical test, fourth-degree driving while under the influence (DWI), and careless driving. After an evidentiary hearing, the district court denied Smart's motion to suppress and concluded that Officer Therkelsen had reasonable suspicion to stop Smart's vehicle. The district court found Smart guilty of third-degree test refusal and fourth-degree DWI. This appeal follows.

2

## D E C I S I O N

### *Reasonable articulable suspicion*

Smart argues that the district court erred by denying his motion to suppress because Officer Therkelsen did not have a "legal justification" to stop his vehicle. "In reviewing a district court's determinations of the legality of a limited investigatory stop, [an appellate court] review[s] questions of reasonable suspicion de novo." *State v. Britton*, 604 N.W.2d 84, 87 (Minn. 2000). Law enforcement may temporarily detain a suspect if "the stop was justified at its inception by reasonable articulable suspicion, and . . . the actions of the police during the stop were reasonably related to and justified by the circumstances that gave rise to the stop in the first place." *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011) (quotation omitted). An appellate court reviews the events surrounding a stop and considers the totality of the circumstances to determine whether a reasonable basis justified the stop. *Britton*, 604 N.W.2d at 87.

Smart argues that Officer Therkelsen did not have reasonable suspicion to stop his vehicle because: (1) the informant did not report a crime or indicate that anyone was injured, (2) Officer Therkelsen did not observe illegal or suspicious activity, and (3) Officer Therkelsen did not independently corroborate the informant's "sketchy information." We are not persuaded.

First, the informant reported that five people were fighting in a parking lot. Thus, it was reasonable to conclude that an assault or disorderly conduct occurred. Second, Officer Therkelsen did not need to observe illegal conduct because reasonable suspicion to stop a vehicle "may be supplied by information acquired from another person." *See*

3

*Marben v. State, Dep't of Pub. Safety*, 294 N.W.2d 697, 699 (Minn. 1980). "Information from a private citizen is presumed reliable." *Playle v. Comm'r of Pub. Safety*, 439 N.W.2d 747, 748 (Minn. App. 1989).

To justify a traffic stop, "an informant's tip must possess sufficient indicia of reliability." *Jobe v. Comm'r of Pub. Safety*, 609 N.W.2d 919, 921 (Minn. App. 2000) (quotation omitted). An appellate court reviewing a traffic stop based on an informant's tip focuses mainly on: "(1) identifying information given by the informant, and (2) the facts that support the informant's assertion[s]." *Id.* Here, the informant provided his name and number. *See Playle*, 439 N.W.2d at 748–49 (stating that tip was reliable when, in part, the informant identified himself as an employee of a particular restaurant). And the informant observed a fight, provided a vehicle description, identified the number of suspects who entered the vehicle, and accurately stated that the vehicle was traveling east. *See Jobe*, 609 N.W.2d at 922 (stating that tip was reliable when the informant offered accurate information about the suspect's vehicle and driving conduct). Thus, the informant's tip was sufficiently reliable.

Third, Officer Therkelsen independently corroborated the informant's information. The informant indicated that four suspects got into a black car and traveled east. Within three minutes, Officer Therkelsen identified a black car, with four occupants, traveling east, within a mile of the reported crime, at a time when there were no other vehicles on the road.

Moreover, when determining whether a stop was justified under the circumstances, an appellate court may consider:

4

(1) the particularity of the description, if any, of the offender; (2) the size or extent of the area in which the offender may be found as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in the area; (4) the known or possible direction of a person's flight, if any; (5) the observed activity of the person stopped; (6) knowledge or suspicion that the person stopped has been involved in criminality of the type presently under investigation.

*Wold v. State*, 430 N.W.2d 171, 174 (Minn. 1988). Based on the above analysis, these factors support the district court's finding that Officer Therkelsen had reasonable, articulable suspicion to conduct an investigative stop. Therefore, the district court did not err when it denied Smart's motion to suppress.

***Implied consent***

Smart also argues that Minnesota's implied-consent law is unconstitutional as applied to him because the state cannot criminalize his right to refuse an illegal, warrantless search.[1] The constitutionality of a statute is a question of law that this court reviews de novo. *State v. Ness*, 834 N.W.2d 177, 181 (Minn. 2013). In Minnesota, "[i]t is a crime for any person to refuse to submit to a chemical test of the person's . . . breath." Minn. Stat. § 169A.20, subd. 2 (2014).

In *State v. Bernard*, the supreme court stated that the state could criminalize the refusal to submit to a breath test and that a warrantless breath test was constitutional

---

[1] The state argues that we should not consider Smart's argument because he failed to raise the issue before the district court. Both parties acknowledged before the district court that this court would review the constitutionality of the test-refusal statute. Additionally, the state briefed the issue. *See Woodhall v. State*, 738 N.W.2d 357, 363 n.6 (Minn. 2007) (stating that the state would not be prejudiced by addressing the constitutionality of a statute because the state briefed the issue).

under the search-incident-to-arrest exception to the Fourth Amendment's warrant requirement. 859 N.W.2d 762, 772, 774 (Minn. 2015), *aff'd sub nom. Birchfield v. North Dakota*, 136 S. Ct. 2160 (2016). Here, Officer Therkelsen arrested Smart and read Smart the implied-consent advisory. After speaking with an attorney, Smart refused to provide a breath sample. Smart does not argue that Officer Therkelsen lacked probable cause to arrest him. Therefore, Smart's argument is unpersuasive because, as applied to Smart, Minnesota's test-refusal statute is constitutional.

**Affirmed.**